**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON**

———————————————————————

| | |
|---|---|
| CITY OF CHICAGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-cv-00518 |
| v. | ) |
| | ) |
| EQUTE LLC and VAPES.COM, | ) |
| | ) |
| Defendants. | ) |

———————————————————————

## COMPLAINT

Plaintiff City of Chicago (the "City") files this Complaint because Defendants EQUTE LLC and Vapes.com (collectively, "Defendants") violated the Municipal Code of Chicago ("MCC") by marketing and selling tobacco products and accessories to Chicago residents under 21 years of age and by selling flavored liquid nicotine products to Chicago residents. In support, the City alleges as follows:

### INTRODUCTION

1.      Defendants operate an internet website—vapes.com—that sells electronic cigarettes ("e-cigarettes"), electronic liquids ("e-liquids"), and related products. E-cigarettes are battery-operated devices that vaporize e-liquids to create an aerosol that the user inhales or "vapes." E-liquids usually contain nicotine, the addictive drug found in combustible cigarettes and other tobacco products.[1] As a result, the City—like the U.S. Food and Drug Administration

---

[1] Center for Disease Control and Prevention, *About Electronic Cigarettes (E-Cigarettes)* (Nov. 4, 2018), available at https://www.cdc.gov/tobacco/basic_information/e-cigarettes/about-e-cigarettes.html#what-are-e-cigarettes.

("FDA")—regulates e-cigarettes and related products as "tobacco products" or "tobacco accessories."[2]

2.      Former FDA Commissioners Scott Gottlieb and Ned Sharpless (Acting Commissioner) both declared youth e-cigarette use to be an "epidemic."[3] Former Secretary of Health and Human Services Alex Azar observed that the U.S. "has never seen an epidemic of substance use arise as quickly as our current epidemic of youth use of e-cigarettes."[4] The "troubling reality," according to Dr. Gottlieb, is that e-cigarettes have "become wildly popular with kids."[5]

3.      Statistics confirm these assessments. According to the National Youth Tobacco Survey, 1.5% of high school students reported "vaping" in 2011. By 2018, 20% of high school students had vaped within the last 30 days.[6] This increase was "the largest ever recorded in the

---

[2]  MCC § 4-64-100; *see also Deeming Tobacco Products to Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Product*, 81 Fed. Reg. 28974 (May 10, 2016).

[3]  Statement from FDA Commissioner Scott Gottlieb, M.D., on new steps to address epidemic of youth e-cigarette use (Sept. 12, 2018), available at https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-new-steps-address-epidemic-youth-e-cigarette-use; Norman E. Sharpless MD, Remarks prepared for testimony before a U.S. House Energy and Commerce Subcommittee on FDA Regulation of Electronic Nicotine Delivery Systems and Investigation of Vaping Illnesses (Sept. 25, 2019), available at https://www.fda.gov/news-events/press-announcements/remarks-prepared-testimony-us-house-energy-and-commerce-subcommittee-fda-regulation-electronic.

[4]  FDA News Release, *FDA finalizes enforcement policy on unauthorized flavored cartridge-based e-cigarettes that appeal to children, including fruit and mint* (Jan. 2, 2020), available at https://www.fda.gov/news-events/press-announcements/fda-finalizes-enforcement-policy-unauthorized-flavored-cartridge-based-e-cigarettes-appeal-children.

[5]  Statement from FDA Commissioner Scott Gottlieb, M.D., on new enforcement actions and a Youth Tobacco Prevention Plan to stop youth use of, and access to, JUUL and other e-cigarettes (Apr. 24, 2018), available at https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-new-enforcement-actions-and-youth-tobacco-prevention.

[6]  Results from 2018 National Youth Tobacco Survey show dramatic increase in e-cigarette use among youth over past year (Nov. 15, 2018) ("National Youth Tobacco Survey"), available at https://www.fda.gov/news-events/press-announcements/results-2018-national-youth-tobacco-survey-show-dramatic-increase-e-cigarette-use-among-youth-over.

past 43 years for any adolescent substance use outcome in the U.S."[7] The epidemic accelerated further in 2019, when 27.5% of U.S. middle school and high school students—more than five million kids—vaped within the last 30 days.[8] The numbers fortunately declined in 2020, likely due to increased education about the dangers of vaping as well as enforcement actions by state and local governments. Even then, about 20% of high school students (3 million) and 5% of middle school students (550,000) reported current e-cigarette use in 2020.[9]

4.      The Illinois Department of Public Health has likewise called youth e-cigarette use "an emerging public health threat."[10] In Illinois, between 2016 to 2018, e-cigarette use increased from 18.4% to 26.7% among high school seniors, a 45% increase; a 15% increase was seen among 8th grade students; and a 65% increase among 10th grade students.

5.      The FDA has cited flavored e-liquids—designed to taste like (among other foods) children's cereals and candies—as a principal driver of the epidemic.  Dr. Sharpless explained that "flavored e-cigarette products are especially attractive to children."[11] Confirming this, the 2020 National Tobacco Survey found that 83% of high school vapers used flavored products.[12]

---

[7]  National Adolescent Drug Trends in 2018 (Dec. 17, 2018), available at https://isr.umich.edu/news-events/news-releases/national-adolescent-drug-trends-in-2018/.

[8]  Tobacco Product Use and Associated Factors Among Middle and High School Students — United States, 2019 (Dec. 6, 2019), available at https://www.cdc.gov/mmwr/volumes/68/ss/ss6812a1.htm.

[9]  E-cigarette Use Among Middle and High School Students — United States, 2020 (Sept. 18, 2020), available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6937e1.htm.

[10]  Illinois Department of Public Health, *E-cigarettes and Vapes*, available at http://www.dph.illinois.gov/topics-services/prevention-wellness/tobacco/e-cigarettes-and-vapes.

[11]  FDA News Release, Trump Administration Combating Epidemic of Youth E-Cigarette Use with Plan to Clear Market of Unauthorized, Non-Tobacco-Flavored E-Cigarette Products (Sept. 11, 2019), available at https://www.fda.gov/news-events/press-announcements/trump-administration-combating-epidemic-youth-e-cigarette-use-plan-clear-market-unauthorized-non.

[12]  E-cigarette Use Among Middle and High School Students — United States, 2020, *supra*.

6.      Unfortunately, due to the e-cigarette industry's marketing practices, more than two-thirds of teens believe that e-cigarette use can be part of a "healthy life."[13] As Dr. Sharpless observed, "research shows many youth are mistaken or unaware of the risks and the presence of nicotine in e-cigarettes."[14] For example, the Illinois Department of Public Health found that although vaping puts "youth at risk for addiction and possibly worse asthma outcomes, … almost 40% of 10th and 12th grade youth believe there is low or no risk of negative health effects."[15]

7.      The U.S. Surgeon General, however, has been clear: youth use of e-cigarettes is "cause for great concern."[16] The Surgeon General explained that youth e-cigarette use may (a) "harm the developing brain which continues to develop until about age 25," (b) "impact learning, memory, and attention," (c) "increase risk for future addiction to other drugs," and (d) "expose both [users] and bystanders to other harmful substances, including heavy metals, volatile organic compounds, and ultrafine particles that can be inhaled deeply into the lungs."

8.      The health risks from flavored vaping products may be even greater. A study conducted by the Harvard School of Public Health found that more than 75% of e-liquids contain bacterial or fungal toxins associated with asthma and chronic obstructive lung disease. The study

---

[13] Betsy McKay & Jennifer Maloney, *Youth Vaping Has Soared in 2018, New Data Show*, WALL ST. J., Sept. 21, 2018, available at https://www.wsj.com/articles/youth-vaping-has-soared-in-2018-new-data-show-1537481424.

[14] FDA News Release, FDA, FTC take action to protect kids by citing four firms that make, sell flavored e-liquids for violations related to online posts by social media influencers on their behalf (June 07, 2019), available at https://www.fda.gov/news-events/press-announcements/fda-ftc-take-action-protect-kids-citing-four-firms-make-sell-flavored-e-liquids-violations-related.

[15] *E-cigarettes and Vapes*, *supra*.

[16] Centers for Disease Control and Prevention, *Surgeon General's Advisory on E-Cigarette Use Among Youth* (2019), available at https://www.cdc.gov/tobacco/basic_information/e-cigarettes/surgeon-general-advisory/pdfs/surgeon-generals-advisory-on-e-cigarette-use-among-youth-2018-h.pdf.

concluded that impurities are more common in fruit-flavored e-liquids,[17] which Defendants feature on their website.

9.      The long-term toll of the vaping epidemic threatens to be enormous. As the American Academy of Pediatrics has observed, "strong and consistent evidence finds that children and adolescents who use e-cigarettes are significantly more likely to go on to use traditional cigarettes—a product that kills half its long-term users."[18] For example, one study found that about 495,000 people aged 12 to 29 who had tried e-cigarettes as of 2018 will become regular smokers of combustible cigarettes, even though none would have become smokers but for vaping. Of those people, an estimated 168,537 will die prematurely due to smoking-related diseases.[19]

10.      In light of the serious public health crisis related to e-cigarette use, the City prohibits the sale of tobacco products and accessories to Chicagoans under the age of 21. MCC § 4-64-345. On information and belief, Defendants have violated this prohibition by selling their products to Chicago residents under the age of 21.

11.      Because flavored products are particularly appealing to youth and new smokers, the City prohibits the sale of flavored liquid nicotine products to all Chicago residents. MCC § 4-64-355. To assess compliance with this ordinance, the City's Department of Business Affairs and Consumer Protection ("BACP") conducted a sting operation into online sales of flavored

---

[17] Mi-Sun Lee, *Endotoxin and (1→3)-β-D-Glucan Contamination in Electronic Cigarette Products Sold in the United States* (Envtl. Health Perspectives, Apr. 24, 2019), available at https://ehp.niehs.nih.gov/doi/10.1289/EHP3469.

[18] Brian P. Jenssen & Susan C. Walley, *E-Cigarettes and Similar Devices*, 143 Pediatrics 2 at 1 (Feb. 2019), available at https://pediatrics.aappublications.org/content/pediatrics/early/2019/01/24/peds.2018-3652.full.pdf; *see also* Outbreak of Lung Injury Associated with E-Cigarette Use, or Vaping, *supra* ("youth who use e-cigarettes are more likely to transition to conventional cigarettes—risking a lifetime of addiction to smoking and resulting smoking-attributable disease").

[19] Emily Baumgaertner et al., *The recent vaping deaths are bad. The long term toll will be even worse*, L.A. TIMES, Oct. 23, 2019, available at https://www.latimes.com/projects/vaping-deaths-long-term/.

products. A BACP supervisor purchased a flavored nicotine liquid product from Defendants' website. Defendants therefore violated MCC § 4-64-355 by causing a flavored liquid nicotine product to be delivered to a BACP address in Chicago.

12. Defendants also violated MCC § 2-25-090, which prohibits "unfair" business practices, by marketing their products to Chicago residents under 21 years of age ("Minors"). As Dr. Sharpless stated, "the epidemic of youth vaping ... has resulted in part from irresponsible practices of manufacturers, importers and retailers who have targeted kids in their marketing of these products."[20] Indeed, in many ways, Defendants have mimicked the playbook that Big Tobacco used to market combustible cigarettes to underage consumers in the decades preceding the ban placed on Big Tobacco's youth-marketing practices by the Master Settlement Agreement. For example:

a. Defendants sell e-liquids with flavors designed to appeal to Minors. Congress prohibited flavored combustible cigarettes (other than menthol) because "flavors make cigarettes more appealing to youth."[21] Yet Defendants offer a wide array of sugary e-liquid flavors, with some modeled after popular children's foods like Froot Loops and Gummy Bears.

b. Defendants' website and social-media pages show pictures of e-liquids that are brightly colored and portray the candies or desserts that the e-liquids are supposed to taste like.

---

[20] FDA News Release, FDA notifies four companies to remove 44 flavored e-liquid and hookah tobacco products from the market for not having required marketing authorization (Aug. 8, 2019), available at https://www.fda.gov/news-events/press-announcements/fda-notifies-four-companies-remove-44-flavored-e-liquid-and-hookah-tobacco-products-market-not.

[21] *Enforcement of General Tobacco Standard Special Rule for Cigarettes*, 74 Fed. Reg. 48974 (Sept. 25, 2009) (citing 21 U.S.C. § 387g).

c.     Defendants market their e-cigarettes as both "cool" and inconspicuous—ideal for Minors seeking to avoid detection.

d.     Defendants market heavily on social media popular with Minors, including Instagram, and post content that is appealing to Minors.  For example, Defendants' social-media posts feature giveaways for youth-oriented toys and stickers and/or images of vaping products near items that appeal to Minors, like videogaming equipment. Defendants explicitly address Minors on their Instagram page by featuring an "Underage" section with posts displaying their products.

e.     Despite their heavy reliance on social media to sell products supposedly intended for adults, Defendants do not use a readily available "age-gate" feature that would restrict Minors' ability to access the social-media content.

13.     The City brings this action to stop these unlawful practices and protect Chicago residents.  Among other remedies described below, the City seeks to (a) enjoin Defendants from selling nicotine-containing e-liquids and related products to Minors in Chicago, (b) enjoin Defendants from marketing nicotine-containing e-liquids and related products to Minors in Chicago, (c) enjoin Defendants from selling flavored liquid nicotine products to Chicago residents, and (d) recover fines authorized by the MCC.

**THE PARTIES**

14.     Plaintiff City of Chicago is a municipal corporation and a home-rule unit organized and existing under the laws of the State of Illinois. The City's Corporation Counsel has the authority to "[a]ppear for and protect the rights and interests of the city in all actions, suits and proceedings brought by or against it or any city officer, board, or department." MCC § 2-60-020.

15.     Defendant EQUTE LLC is a Minnesota limited liability company with its principal place of business in Minnesota.

16.     On information and belief, Defendant Vapes.com is a Minnesota business with its principal place of business in Minnesota.

17.     On information and belief, EQUTE LLC and Vapes.com are alter egos.

a.      The Terms and Conditions page on vapes.com, which states that it is current through July 2020, suggests that EQUTE LLC and Vapes.com are the same company. For example, the Terms and Conditions state: "By purchasing products from Vapes.com (EQUTE LLC) you certify and agree that you are over 18 years of age and that products purchased from Vapes.com (EQUTE LLC) are to be used solely by persons over the age of 18."

b.      Although the Terms and Conditions page on vapes.com states that "VAPES, Vapes.com and VAPESCOM" are subsidiaries of EQUTE LLC, the Minnesota Secretary of State's website does not identify those entities as being incorporated in Minnesota. The City therefore alleges that Vapes.com is not incorporated separately from EQUTE LLC.

c.      When a BACP supervisor purchased an e-liquid product from vapes.com in November 2020, the product arrived in packaging that identified the sender as "EQUTE LLC." The return address listed on the package was 9201 E Bloomington Frwy #F in Bloomington, Minnesota, which is also the registered office address for EQUTE LLC on the Minnesota Secretary of State's business registration website.

d.      The Minnesota Secretary of State's website identifies Jeffrey Evenmo as the "Manager" of EQUTE LLC. The Better Business Bureau identifies Jeff Lee as the

"Owner/Manager" of Vapes.com. A public records search indicates that Jeffrey Evenmo's middle name is Lee. Based on these facts, the City alleges that Jeffrey Evenmo and Jeff Lee are the same person.

## JURISDICTION AND VENUE

18.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and the City is a citizen of a different State than Defendants.

19.     The Court has personal jurisdiction over Defendants because Defendants have conducted and continue to conduct business in Illinois.

20.     Venue is proper under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and thus reside in this District.

## GENERAL ALLEGATIONS

**I.      The City Prohibits The Sale Of E-Cigarettes And Related Products To Minors Because Those Products Significantly Harm Youth Health.**

21.     Due to the substantial public-health injuries caused by e-cigarettes and other tobacco products, the City strictly regulates the sale of these products.  Among other provisions, the MCC states: "No person shall sell, give away, barter, exchange or otherwise furnish any tobacco products, tobacco product samples or tobacco accessories at retail or otherwise for consumption to any individual under 21 years of age."  MCC § 4-64-345.[22]

22.     The MCC defines "tobacco product" to mean "any electronic cigarette as defined herein or component or part thereof or any product in leaf, flake, plug, liquid, or any other form, containing nicotine derived from tobacco, which product is intended to enable human consumption of the tobacco or nicotine, whether chewed, smoked, absorbed, dissolved, inhaled,

---

[22]  The MCC is available at  https://codelibrary.amlegal.com/codes/chicago/latest/chicago_il/0-0-0-2438966.

9

snorted, sniffed, or ingested by any other means." *Id.* § 4-64-100. The MCC defines "tobacco accessories" to include "any" item "designed primarily for the smoking or ingestion of tobacco products." *Id.*

23. Defendants offer "tobacco products" and "tobacco accessories" for sale on vapes.com. For example, e-liquids are "tobacco products" under the MCC because they "contain nicotine derived from tobacco" and are "intended to enable human consumption of the tobacco or nicotine." *Id.*

24. The City has repeatedly enforced these laws, suing over 40 vaping businesses that sold tobacco products and accessories to underage Chicagoans and serving notices of violation on many more. *E.g.*, *City of Chi. v. BCC Distrib. et al.*, 2019 CH 01756 (Cook Cnty. Cir. Ct.).

25. Other governments have similarly sued dozens of online vaping businesses for selling to minors and/or inadequately verifying purchasers' ages.[23] And from August 2016 through April 2020, the FDA issued more than 10,000 warning letters and more than 1,400

---

[23] *E.g.*, Attorney General Moody Takes Action Against Two Florida Vaping Companies Marketing to Minors, available at http://www.myfloridalegal.com/newsrel.nsf/newsreleases/FFDD746830D6CE4D8525857D005164A6#:~:text=%E2%80%94Attorney%20General%20Ashley%20Moody%20today,the%20age%20of%20their%20customers.&text=Attorney%20General%20Ashley%20Moody%20said,the%20defendants%20in%20this%20case; City Attorney Feuer Seeking Injunctions Against Vape Companies for Allegedly Targeted Children, available at https://www.lacityattorney.org/post/2018/10/31/city-attorney-mike-feuer-seeks-injunctions-against-three-online-e-cig-companies-for-alleg; AG Healey Sues Eight Online E-cigarette Retailers for Illegally Selling Flavored Products in Violation of New State Law, available at https://www.mass.gov/news/ag-healey-sues-eight-online-e-cigarette-retailers-for-illegally-selling-flavored-products-in; De Blasio Administration Cracks Down on E-Cigarette Sales to Minors with New Lawsuit Against 22 Sellers, available at https://www1.nyc.gov/office-of-the-mayor/news/473-19/de-blasio-administration-cracks-down-e-cigarette-sales-minors-new-lawsuit-against-22#:~:text=NEW%20YORK%E2%80%94Mayor%20de%20Blasio,of%20e%2Dcigarettes%20by%20minors; Attorney General Josh Stein Files Lawsuits Against Eight E-Cigarette Companies, available at https://ncdoj.gov/attorney-general-josh-stein-files-lawsuits-against-eight-e-cigarette-companies/.

administrative complaints to retailers—including online retailers—for selling vaping products to minors.[24]

26.    Taken together, these actions demonstrate the vaping industry's widespread failure to prevent sales of tobacco products and accessories to minors.

## II.    Defendants Market Their Tobacco Products And Accessories To Minors.

27.    Although some manufacturers have marketed e-cigarettes as a smoking-cessation product for adults, "[e]-cigarette use is generally greatest among adolescents and young adults and decreases with age in adults."[25] And as the American Academy of Pediatrics recently observed, e-cigarette sellers "target children with enticing candy and fruit flavors and use marketing strategies that have been previously successful with traditional cigarettes to attract youth to these products."[26]

28.    Because 95% of adult smokers start smoking by the age of 21,[27] Big Tobacco focused its marketing on young consumers by (among many other tactics) promoting flavored cigarettes.  To take just one example, a 1979 Lorillard memorandum stated that "younger" consumers would be "attracted to products with 'less tobacco taste.'"  The memorandum therefore suggested borrowing "data from the company which produced 'Life Savers' as a basis for determining which flavors enjoy the widest appeal" among youth.[28]

---

[24] FDA, Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization at 8 (Apr. 2020), available at https://www.fda.gov/media/133880/download.

[25] *E-Cigarettes and Similar Devices*, *supra*.

[26] *Id.*

[27] Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps to protect youth by preventing access to flavored tobacco products and banning menthol in cigarettes (Nov. 15, 2018), available at https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm625884.htm.

[28]    Letter    from    S.T.    Jones    to    File    at    1    (June    8,    1979),    available    at https://www.industrydocumentslibrary.ucsf.edu/tobacco/docs/#id=mjxf0129.

29.     In 2009, Congress prohibited the sale of flavored combustible cigarettes (other than menthol) because "flavors make cigarettes more appealing to youth."[29]

30.     Similarly, one survey found that that 81% of 12- to 17-year-old e-cigarette users had used a flavored e-cigarette the first time that they tried the product.[30]  Due to this and similar research, both the American Lung Association and the American Academy of Pediatrics have urged the FDA to "prohibit all flavored tobacco products, including all e-cigarettes."[31]

31.     The FDA has responded by prioritizing enforcement actions against the sale of flavored cartridge-based vaping products that lack pre-market authorization.[32] The FDA explained that "[r]esearch shows youth and young adults identify flavors as a primary reason for e-cigarette use."[33] The Chicago City Council has gone farther, recently prohibiting the sale of flavored e-liquids as part of an effort to reduce vaping by underage City residents.[34]

32.     Youth use of flavored e-liquids is even more problematic because, as the National Youth Tobacco Survey found, "kids whose first tobacco product was flavored are more likely to become current tobacco users than those whose first product was tobacco-flavored."[35]  To make matters worse, "adolescents perceive that e-cigarettes with flavors are less harmful than those

---

[29] *Enforcement of General Tobacco Standard Special Rule for Cigarettes*, 74 Fed. Reg. 48974 (Sept. 25, 2009) (citing 21 U.S.C. § 387g).

[30] Ambrose, BK, et al., *Flavored Tobacco Product Use Among US Youth Aged 12-17 Years, 2013-2014*, Journal of the American Medical Association (Oct. 26, 2015).

[31]  American Lung Association, *State of Tobacco Control 2019* at 7 (2019); Brian P. Jenssen & Susan C. Walley, AAP policy calls for reforms to combat rise in youth e-cigarette use (Jan. 28, 2019), available at http://www.aappublications.org/news/2019/01/28/ecigarettes012819.

[32] *FDA finalizes enforcement policy on unauthorized flavored cartridge-based e-cigarettes that appeal to children, including fruit and mint, supra.*

[33]  National Youth Tobacco Survey, *supra*.

[34] MCC § 4-64-355(c); *see also* City Council Passes Ordinance Banning the Sale of Flavored Vaping Products as the City Takes Another Important Step to Protect the Health of Young People (Sept. 9, 2020), available                                                                                                                                at https://www.chicago.gov/content/dam/city/depts/mayor/Press%20Room/Press%20Releases/2020/September/BanningSaleFlavoredVapingProducts.pdf.

[35]  2018 NYTS Data: A Startling Rise in Youth E-cigarette Use, available at https://www.fda.gov/TobaccoProducts/PublicHealthEducation/ProtectingKidsfromTobacco/ucm625887.htm.

with tobacco flavors, creating a potential misperception that e-cigarettes with flavors do not contain nicotine."[36]

33.     Further, studies have shown that, at least with youth, e-cigarette use increases the likelihood that non-smokers will begin smoking traditional cigarettes.[37] And the previously mentioned study on the long-term effect of e-cigarettes found that many adult e-cigarette users continue to smoke traditional cigarettes.[38] As a result, those users had a significantly higher risk of developing chronic lung disease than someone who just used e-cigarettes or traditional cigarettes alone.

34.     The FDA has expressed particular concern about flavored e-liquids modeled after "popular children's cartoon or animated characters, or names of products favored by kids like brands of candy or soda."[39] In 2018, the FDA determined that some online e-liquid retailers violated federal law by using "labeling and/or advertising that causes [the e-liquids] to imitate food products, particularly ones that are marketed toward, and/or appealing to, children."[40] Among other products, the FDA cited e-liquids designed to look and/or taste like Froot Loops, Gummy Worms, and Lucky Charms.[41]

35.     Defendants offer tobacco products and accessories for sale on their website, vapes.com. Despite the clear evidence indicating the connection between youth tobacco usage and flavored products, Defendants' website and social media market e-liquids with youth-

---

[36] *E-Cigarettes and Similar Devices*, *supra*.

[37] Kaitlyn M. Berry et al, *Association of Electronic Cigarette Use With Subsequent Initiation of Tobacco Cigarettes in US Youths*, JAMA Network Open (Feb. 1, 2019), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2723425.

[38] Dharma N. Bhatta, et al., *Association of E-Cigarette Use With Respiratory Disease Among Adults: A Longitudinal Analysis*, 58 Am. J. Prev. Med. 182, 184-6 (2019).

[39] Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps to protect youth by preventing access to flavored tobacco products and banning menthol in cigarettes, *supra*.

[40] Letter from FDA Director Ann Simoneau to E-Juice Vapor, Inc. (Sept. 12, 2018), available at https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm619256.htm.

[41] *E.g.*, E-Liquids Misleadingly Labeled or Advertised as Food Products, available at https://www.fda.gov/TobaccoProducts/NewsEvents/ucm605729.htm.

friendly candy and sweet flavors and flavors designed to mimic children's foods, including many of the very same flavors that the FDA criticized.

36.     For example, vapes.com offers e-liquid flavors in cotton candy ("Blueberry Cotton Candy E-Juice," "Cotton Candy Clouds E-Juice"), cookies ("Frosted Animal Cookies E-Juice," "Cookies 'n' Cream E-Juice"), and lemonade ("Pink Lemonade E-Juice," "Strawberry Lemonade E-Juice," "Raspberry Lemonade E-Juice"). Illustrative screenshots are below:









37.     Even more egregiously, vapes.com markets e-liquids with flavors explicitly modeled after kids' cereals and other sweet products, such as Froot Loops (the immaturely named "Fruity Poops E-Juice") and gummy bears ("Gummiberry E-Juice").



Fruity Poops E-Liquid by Juishy E-Juice (100ml)
$20.00  $10.00 Sale

Gummiberry Juice E-Liquid by Juishy E-Juice (100ml)
$20.00  $10.00 Sale

38.     Defendants supplement the content on their website by targeting Minors through social-media marketing that employs many of the same techniques used on Defendants' website. These techniques include posts picturing e-liquids alongside the candies or children's cereals that the e-liquids allegedly taste like, vape tricks, scantily clad young women, and snapshots of vapers who appear to be Minors. Representative screenshots are included below:



15





39.     Defendants' Instagram page also features product giveaways for items popular with young people, including big-ticket items like MacBook computers and even more

troublingly, children's toys like Fidget Spinners[42] and stickers. The following Instagram post is representative:



40.     In addition, Defendants' social-media posts use "hashtags"—a word or phrase preceded by the symbol # that classifies or categorizes the accompanying text—designed to reach Minors.  For instance, if a Defendant's Instagram post uses the hashtag "#vapeporn," then Minors who search for #vapeporn will receive a list of results that include that Defendant's post. To further encourage Minors to view its advertisements, Defendants use hashtags that appeal to young adults and children, including #videogames and #skateandvape. A young person could thus innocently search #skateboard or #fidgetspinner and be presented with Defendants' e-

---

[42] Lindsey Bever, *Fidget Spinners Are Hugely Popular With Kids. They're Also a Choking Hazard, Consumer Group Warns* (June 21, 2017), available at https://www.washingtonpost.com/news/parenting/wp/2017/06/21/fidget-spinners-are-hugely-popular-with-kids-theyre-also-a-choking-hazard-consumer-group-warns/?utm_term=.bbbd379fdede ("Fidget spinners have become the latest toy craze — twirling atop so many children's fingers that some teachers have banned them from classrooms.").

cigarette marketing and advertising. The following representative screenshot shows a post with youth-oriented hashtags:



41.     Defendants' Instagram page even contains content directed specifically at minors that makes fun of legal age restrictions on its products.  Defendants' Instagram stories page has a section titled "Underage."  In this section, Defendants display an image of a person vaping while wearing a t-shirt that says: "I am a mom against vaping." The next post in that section depicts e-cigarettes in the shape of penises:

 

42.     Defendants focus their social-media content on platforms such as Instagram that are particularly attractive to Minors. A study by the Pew Research Center found "substantial differences in social media use by age," with 18- to 29-year-olds significantly more likely to use some form of social media.[43] The Pew study also found "pronounced differences in the use of various social media platforms within the young adult population."[44] Americans "ages 18 to 24 are substantially more likely to use platforms such as Snapchat, Instagram and Twitter even when compared to those in their mid- to late-20s."[45]

43.     The disproportionate use of social media by young people extends to teenagers. Pew found that 72% of teenagers use Instagram,[46] more than double the 35% of adults who do

---

[43]  Pew Research Center, *Social Media Use in 2018* (Mar. 1, 2018), available at http://www.pewinternet.org/2018/03/01/social-media-use-in-2018/.

[44]  *Id.*

[45]  *Id.*

[46]  Pew Research Center, *Teens, Social Media & Technology 2018* (May 31, 2018), available at http://www.pewinternet.org/2018/05/31/teens-social-media-technology-2018/.

so.[47]  And nearly half of Americans between 13 and 17 years old reported being online "almost constantly."[48]

44.     On information and belief, many of the users who visit Defendants' social-media websites are Minors.  Defendants could restrict Minors' ability to access Defendants' social-media posts by using an "age gate" feature that confines access to adults—a feature offered by Instagram, Facebook, and YouTube.[49] The City's investigation revealed that Defendants do not do so.

45.     A BACP supervisor successfully accessed and viewed content on Defendants' Facebook and YouTube pages without any age verification or link to an adult Facebook profile. The BACP supervisor also successfully accessed Defendants' Instagram page without using an account linked to a date of birth or otherwise providing a date of birth.  To click on and expand posts on Defendants' Instagram page, the BACP supervisor needed to create an Instagram account, requiring the supervisor to enter a date of birth.  The BACP supervisor entered a 2001 birthdate—which would make the user 19 years old—and was then able to fully access Defendants' Instagram posts.

46.     Many vaping businesses have augmented their online marketing by offering their kid-friendly products for sale in City stores. The FDA has warned vaping manufacturers that in determining whether to pursue administrative actions, the agency will consider "[w]hether the manufacturer has implemented adequate programs to monitor retailer compliance with age-

---

[47] *Social Media Use in 2018*, *supra*.
[48] *Teens, Social Media & Technology 2018*, *supra*.
[49]  Instagram, for example, either utilizes users' age data from Facebook to confirm their ages or asks users to confirm their dates of birth before they can access age-gated account profiles.  *See* Instagram Help Page, available at https://help.instagram.com/801322493288277.

verification and sales restrictions."[50] As the FDA noted, manufacturers have conceded "that they had mechanisms, such as through distribution agreements, to enforce financial penalties and stop sales to retailers in response to noncompliance" with age restrictions.

47.     Defendants, however, have made clear that they have little regard for the FDA. For example, Defendants' website offers the following sweatshirt for sale:



### III.     Defendants Sold Tobacco Products To Chicago Minors.

48.     The City's investigation revealed that Defendants have sold tobacco products to underage Chicago residents.

49.     Defendants' sales to underage Chicagoans are no accident. As described above, Defendants specifically target youth in several ways. They market e-liquids modeled after kid-friendly foods. They advertise heavily on youth-friendly social media without any age-gates that would prevent young people from viewing their marketing. On social media, they ridicule age-restrictions and use hashtags with kid-focused themes like #videogames and #fidgetspinner. Defendants also give away children's toys with their tobacco products.

---

[50] *FDA finalizes enforcement policy on unauthorized flavored cartridge-based e-cigarettes that appeal to children, including fruit and mint*, *supra*.

50.     In addition to the practices described above, Defendants' website and social media confirm that Defendants sell their products to underage Chicagoans.

51.     To evaluate whether Defendants deter Minors from entering their website, a BACP supervisor navigated to the vapes.com homepage. A pop-up window asked whether the viewer was an adult. But even after clicking "underage," the BACP supervisor was allowed to proceed to the website. After identifying himself as "underage," the BACP supervisor received a pop-up window *encouraging* sales by advertising "Illinois Resident Discounts." This demonstrates that Defendants not only sell to youth, they sell to youth in Illinois (and thus Chicago). The following screenshot shows the region-specific advertisement, available to all viewers regardless of their stated age:



52.     Even when Defendants acknowledge age restrictions, they do so only for minors under the age of 18, despite the fact that the legal age to purchase e-cigarettes and e-liquids in Chicago (and nationally) is 21. For example, as the following screenshot shows, the home page on vapes.com states: "Must be 18 or older to purchase items for tobacco use":



53.     The Terms and Conditions page on vapes.com similarly states:

**Purchase Policy** By purchasing products from Vapes.com (EQUTE LLC) you certify and agree that you are over 18 years of age and that products purchased from Vapes.com (EQUTE LLC) are to be used solely by persons over the age of 18. You agree that no

54.     Defendants have also identified 18 as the legal age on webpages marketing nicotine-containing e-liquids. For example, the screenshot below markets a product modeled after the cereal Froot Loops:

Loopy *Special Edition is a max VG version of the popular Fruit Cereal flavored vapor e-liquid by Sweet Tooth E-Juice.

**What You Get**:

- **15ml Loopy *Special Edition* MAX VG E-Liquid** by Sweet Tooth E-Juice with Glass Bottle and Dripper

This e-juice is a **90% VG** blend.

**18+ FOR ADULTS ONLY**

55.     Defendants' Instagram page further suggests that Defendants at most prohibit tobacco sales to those under 18 years old, stating "Adults Only" with a picture of the number 18 crossed out in red:



56.     Defendants' YouTube page does not contain any information about age restrictions on purchasing its products.

57.     As discussed above, Defendants' Instagram page, which does not have an age-gate that would prevent underage individuals from entering, specifically targets underage customers with an advertising section titled "Underage" that contains, among other things, an immature picture of e-cigarettes shaped like penises.

58.     Based on these facts, the City's investigation, and information and belief, the City alleges that Defendants have failed to verify the Chicago purchasers are of legal age, and that Defendants have sold tobacco products and accessories to underage Chicagoans.

**IV.     Defendants Sold Flavored Liquid Nicotine Products to Chicago Residents.**

59.     Because flavored products are particularly appealing to youth and first-time smokers, the City Council passed a prohibition on flavored vaping products in September 2020.

MCC § 4-64-355(c) states: "No person shall sell, give away, barter, exchange, or otherwise furnish to any other person any flavored liquid nicotine product."

60.     The MCC defines a "flavored liquid nicotine product" to be a liquid nicotine product

> that contains a constituent that imparts a characterizing flavor. As used in this definition, the term "characterizing flavor" means a distinguishable taste or aroma, imparted either prior to or during consumption of a liquid nicotine product, including but not limited to tastes or aromas of menthol, mint, wintergreen, chocolate, vanilla, honey, cocoa, any candy, any dessert, any alcoholic beverage, any fruit, any herb, or any spice, but shall not include the taste or aroma of tobacco. No liquid nicotine product shall be determined to have a characterizing flavor solely because of the use of additives or flavorings or the provision of ingredient information. A public statement or claim made or disseminated by the manufacturer or a liquid nicotine product, or any person authorized or permitted by the manufacturer to make or disseminate such statement or claim, that a liquid nicotine product has or produces a characterizing flavor shall establish that the liquid nicotine product is a flavored liquid nicotine product.

*Id.* § 4-64-100.

61.     Defendants sell flavored liquid nicotine products on vapes.com and make public statements that their liquid nicotine products "ha[ve] or produce[] a characterizing flavor."

62.     For example, Defendants sell "Banana Split E-Juice," which Defendants describe as having the "incredible flavor" of "Bananas, Ice Cream, Cherry, [and] Chocolate."[28] 94 of the 98 products listed on vapes.com's "E-Juice" section are described as having a flavor other than "the taste or aroma of tobacco." MCC § 4-64-100.

63.     To determine whether Chicago residents can buy flavored liquid nicotine products from Defendants, a BACP supervisor visited vapes.com. The BACP supervisor ordered a nicotine-containing e-liquid called "Kong's Root Beer E-Juice" from Defendants on or about November 6, 2020. On or about November 12, 2020, Defendants caused that product to be delivered to the BACP supervisor at 2350 West Ogden Avenue, Chicago, IL 60608.

64. "Kong's Root Beer E-Juice" is a flavored liquid nicotine product. The page for the product on vapes.com describes the flavor as a "great sweet sudsy taste of root beer in a smooth vape. Kong's Root Beer Barrel E-Juice can be your next all-day-vape with smooth root beer flavor and a hint of lemon aftertaste."

65. Based on Defendants' failure to restrict the sale of flavored liquid nicotine products to a BACP supervisor, the City believes and therefore alleges that Defendants have sold additional flavored liquid nicotine products to other Chicago residents.

## COUNT 1
## Violation of MCC § 2-25-090

66. The City incorporates all preceding allegations as if they were set forth herein.

67. After the City investigated Defendants, the BACP Commissioner determined that Defendants violated MCC § 2-25-090(a) and requested that the Corporation Counsel bring an action against Defendants seeking all available relief.

68. MCC § 2-25-090(a) provides that violations of "any section of this Code relating to business operations or consumer protection, shall be a violation of this section." MCC §§ 4-64-345 and 355 relate "to business operations or consumer protection." Accordingly, because Defendants violated MCC §§ 4-64-345 and 4-64-355, Defendants also violated MCC § 2-25-090.

69. Defendants also violated MCC § 2-25-090 because Defendants' conduct offends public policy, is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to consumers. Specifically, Defendants violated MCC § 2-25-090 under this standard by (a) marketing tobacco products and accessories to Minors in Chicago and (b) failing to use an adequate age-verification system to determine whether consumers were of legal age before selling tobacco products and accessories to Chicago residents.

70.     The MCC provides that any person "who violates any of the requirements of this section shall be subject to a fine" up to $10,000 "for each offense."  MCC § 2-25-090(f).  "Each day that a violation continues shall constitute a separate and distinct offense to which a separate fine shall apply."  *Id.*  The City is therefore entitled to fines for each day that Defendants violated MCC § 2-25-090.

71.     The MCC also authorizes "injunctive" and "equitable" relief for violations of Section 2-25-090.  MCC § 2-25-090(e)(4).  The City is thus entitled to injunctive and equitable relief as described below.

## COUNT 2
## Violation of MCC § 4-64-345

72.     The City incorporates all preceding allegations as if they were set forth herein.

73.     Defendants violated MCC § 4-64-345 by selling or otherwise furnishing tobacco products and accessories for consumption to Chicago residents under 21 years of age.

74.     The MCC provides that any person "who violates Section 4-64-345 shall be punished by a fine of not less than $1,000 nor more than $5,000 for each offense.  Each day that a violation continues shall constitute a separate and distinct offense."  MCC § 4-64-910.

75.     The City is therefore entitled to fines for all tobacco products and/or accessories that Defendants sold to Minors residing in Chicago.

76.     The City also seeks the declaratory and injunctive relief described below.

## COUNT 3
## Violation of MCC § 4-64-355

77.     The City incorporates all preceding allegations as if they were set forth herein.

78.     Defendant violated MCC § 4-64-355(c) by selling or otherwise furnishing flavored nicotine liquid tobacco products for consumption to Chicago residents.

27

79.     The MCC provides that any person "who violates [Section 4-64-355] shall be punished by a fine of not less than $1,000 nor more than $5,000 for each offense. Each day that a violation continues shall constitute a separate and distinct offense." MCC § 4-64-355(d).

80.     The City is therefore entitled to fines for flavored liquid nicotine products that Defendants sold to Chicago residents.

81.     The City also seeks the declaratory and injunctive relief described below.

**REQUEST FOR RELIEF**

The City respectfully requests that the Court enter an order granting the following relief:

A.      Declaring that Defendants have violated the MCC;

B.      Enjoining Defendants from selling tobacco products and accessories to Chicago residents under the age of 21;

C.      Enjoining Defendants from selling tobacco products and accessories to Chicago residents without using adequate age-verification tools;

D.      Enjoining Defendants from engaging in unfair methods of competition and business practices, as described in this Complaint, in violation of MCC § 2-25-090;

E.      Enjoining Defendants from selling flavored liquid nicotine products to Chicago residents, in violation of MCC § 4-64-355;

F.      Assessing Defendants a fine of $5,000 for each violation of MCC § 4-64-345;

G.      Assessing Defendants a fine for each violation of MCC § 2-25-090, in the amount of $10,000 for each day such violation has existed and continues to exist;

H.      Assessing Defendants a fine of $5,000 for each violation of MCC § 4-64-355;

I.      Awarding the City reasonable attorneys' fees and costs;

J.      Awarding the City pre- and post-judgment interest, to the extent allowable;

K.  Awarding such other injunctive and declaratory relief as is necessary; and

L.  Awarding such other relief as the Court deems reasonable and just.

## JURY DEMAND

Chicago requests a trial by jury of all claims.

Dated: January 29, 2021                  Respectfully submitted,

                                          Celia Meza
                                          Acting Corporation Counsel of the City of Chicago

                                          By: /s/ Stephen J. Kane

Stephen J. Kane (stephen.kane@cityofchicago.org)
Rebecca Hirsch (rebecca.hirsch2@cityofchicago.org)
Elie Zenner (elie.zenner@cityofchicago.org)
Rachel Granetz (rachel.granetz@cityofchicago.org)
City of Chicago Department of Law
Affirmative Litigation Division
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
Tel:    312-744-6815